1

2

3                              UNITED STATES DISTRICT COURT

4                          WESTERN DISTRICT OF WASHINGTON
                                        AT SEATTLE
5

6    LUAY FINCHAN,                                    Case No. C07-587MJP

7                    Plaintiff,

8         v.                                          ORDER GRANTING
                                                      PLAINTIFF'S MOTION FOR
9    MICHAEL MUKASEY, et al.,                         ATTORNEYS' FEES AND
                                                      COSTS
10                   Defendants.

11

12        This matter comes before the Court on Plaintiff's motion for attorneys' fees and costs

13   pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Dkt. No. 15.)

14   After reviewing the moving papers, Defendants' response (Dkt. No. 16), Plaintiff's reply (Dkt.

15   No. 17), and all papers submitted in support thereof, the Court GRANTS Plaintiff's motion.  The

16   Court's reasoning is set forth below.

17                                       **Background**

18        Plaintiff Luay Finchan, an Iraqi refugee, has been a legal permanent resident of the United

19   States since 2000.  Mr. Finchan filed an application for naturalization with the United States

20   Citizenship & Immigration Service ("USCIS") in January 2006.  USCIS interviewed Mr. Finchan

21   on June 14, 2006 when it approved his disability-based waiver for the English literacy and civics

22   examination and told him that he met the residence and good moral character requirements for

23   naturalization.  Although USCIS had obtained a complete criminal background check on Mr.

24   Finchan before the interview, it delayed adjudicating Mr. Finchan's naturalization application

25   because the FBI "name check" had not been completed.  By February 2007, USCIS had still failed

26   to process Mr. Finchan's application.

27

ORDER — 1

On February 1, 2007, Mr. Finchan's claims were included with those of eleven other plaintiffs in a Complaint for Naturalization, Declaratory Relief and Mandamus filed by Hassan Shamdeen, Case No. C07-164MJP, pursuant to 8 U.S.C. § 1447(b).  Three additional plaintiffs were later added to the action by Amended Complaint, which requested the following relief:

> Plaintiffs request that the Court grant their naturalization applications, give them their oaths of citizenship and order Defendant CIS to prepare and provide certificates of naturalization.  In the alternative, Plaintiffs request that the Court remand the cases to CIS with instructions that the applications be adjudicated within 30 days of the order.

(Dkt. No. 1 at 3.)  In a later section of the complaint entitled "Request for Relief," Plaintiffs ask the Court to:

> Grant the applications of plaintiffs, and give the plaintiffs their oath of citizenship, or, in the alternative, order Defendant CIS to administer oaths of citizenship to plaintiffs within 10 days of the order.

(Dkt. No. 1 at 15.)  On Defendants' motion, the Court issued an order severing the claims of the plaintiffs on April 23, 2007 and created fifteen discrete cases.

Mr. Finchan was assigned Case No. C07-587MJP.  On April 25, 2007, the Court ordered Defendants to show cause why the Court should not grant Mr. Finchan's application for naturalization.  (Dkt. No. 2.)  Defendants responded to the order with a motion to dismiss and/or remand (Dkt. No. 4), which the Court denied on August 6, 2007 (Dkt. No. 8).  After an evidentiary hearing held on September 13, 2007, the Court found that Mr. Finchan had met his burden of proving that he was eligible for citizenship "[b]ecause Mr. Finchan has offered proof of his eligibility for citizenship, and because the Government has failed to offer any evidence contradicting that eligibility[.]"  (Dkt. No. 11 at 3.)  The Court then remanded Mr. Finchan's case to USCIS and instructed Defendants to issue a decision on Mr. Finchan's application by September 18, 2007.  Mr. Finchan was naturalized on September 18, 2007 and the Court dismissed his case on September 20, 2007.  Plaintiff now brings this motion for attorneys' fees and costs pursuant to the EAJA.

ORDER — 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Jurisdiction**

The Court has jurisdiction over Mr. Finchan's action pursuant to 8 U.S.C. § 1447(b), which states:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter.

Under this authority, the Court has jurisdiction over this matter if USCIS has not made a naturalization determination within 120 days of "the examination." The Court followed the majority of district court decisions on the issue in concluding that the word "examination" refers to the date of the examination interview with a USCIS officer, and not the entire examination process. (Dkt. No. 8.) Mr. Finchan's interview took place on June 14, 2006 and USCIS had failed to act on his application over seven months later when he filed this action on February 1, 2007.

**Analysis**

Under the EAJA, a litigant who has brought a civil suit against the United States is entitled to attorney's fees and costs if: (1) he is the prevailing party in the matter; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. 28 U.S.C. § 2412(d)(1)(A). Additionally, the application for fees must be filed within 30 days of a final judgment. Defendants do not challenge Plaintiff's motion as untimely.

I. Prevailing Party

The Ninth Circuit has identified two factors that define "prevailing party" under the EAJA. Carbonell v. INS, 429 F.3d 894 (9th Cir. 2005). Plaintiff's action must have resulted in: (1) a material alteration in the parties' legal relationship; and (2) that alteration must have been judicially sanctioned. Id. at 898.

ORDER — 3

1    "A party need not succeed on every claim in order to prevail. Rather, a plaintiff

2   prevails if he has succeeded on any significant issue in litigation which achieved some of the

3   benefit he sought in bringing suit." Id. at 901 n.5 (internal citations and quotation marks

4   omitted). Mr. Finchan sought two alternative forms of relief in his complaint: (1) that the

5   Court grant his naturalization application; or (2) that the Court order USCIS to adjudicate his

6   application and administer an oath of citizenship. In remanding the case to USCIS, the Court

7   found that Mr. Finchan had made a prima facie showing of eligibility for citizenship and

8   ordered USCIS to naturalize him or show cause why the Court should not. Mr. Finchan

9   achieved a material alteration in his legal relationship with Defendants when his application

10  was finally adjudicated.

11       The material alteration in the relationship between the parties must also be stamped

12  with some "judicial imprimatur." Carbonell, 429 F.3d at 901. Relief achieved through a

13  voluntary change that was simply prompted by the lawsuit does not convey prevailing party

14  status on the plaintiff. See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health &

15  Human Res., 532 U.S. 598, 605 (2001) (rejecting the "catalyst theory" on the ground that it

16  lacks the critical factor of "judicial sanction").

17       USCIS did not voluntarily naturalize Mr. Finchan but was compelled to do so by the

18  Court. When Mr. Finchan brought this action under § 1447(b), the Court assumed exclusive

19  jurisdiction and had two options for disposition of the matter: (1) to determine the matter on

20  the merits; or (2) to "remand the matter, with appropriate instructions, to [USCIS] to

21  determine the matter." United States v. Hovsepian, 359 F.3d 1144, 1161 (9th Cir. 2004); 8

22  U.S.C. § 1447(b). On September 14, 2007, the Court remanded Mr. Finchan's case to

23  USCIS with explicit instructions to adjudicate the application and reserved the right to re-

24  establish jurisdiction if Defendants failed to comply with its order:

25           The Court is not interested in naturalizing anyone who should not be naturalized.
             But the Court is interested in forcing the agency to perform and carry out its
26           statutory duty. If the Government does not naturalize Mr. Finchan on September
             18th, then the Government must appear before this Court on September 19 at
27

ORDER — 4

1  9:00 a.m., and explain exactly why Mr. Finchan does not meet the citizenship
   criteria.  The Court will administer the naturalization oath to Mr. Finchan on
2  September 19, unless the Government can articulate a good reason at the hearing
   why it should not do so.
3  (Dkt. No. 11 at 4) (emphasis in original).  USCIS acted on Mr. Finchan's application at the

4  direction of the Court and would have violated a court order if it had not.

5         Further, Mr. Finchan's success on the merits does not rely solely on the fact that

6  USCIS ultimately granted his application for naturalization; instead, his success stems from

7  the fact that USCIS adjudicated his naturalization application at all.  Section 1447(b) is "a

8  statutory check on what could otherwise amount to an infinite amount of time available to the

9  government in which to render a decision on the application[.]"  Alghamdi v. Ridge, No.

10 3:05cv344-RS, 2006 U.S. Dist. LEXIS 68498, *13 (N.D. Fla. Sep. 25, 2006).  The Ninth

11 Circuit has found that "[a] central purpose of [§ 1447(b)] was to reduce the waiting time for

12 naturalization applicants."  Hovsepian, 359 F.3d at 1163 (citing H.R. Rep. No. 101-187, at 8

13 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison)).  Mr.

14 Finchan's action put an end to the delay in processing his application and forced USCIS to

15 make a determination on his immigration status.  USCIS's discretion in deciding whether to

16 grant or deny Mr. Finchan's application does not transform the adjudication of that

17 application into a voluntary act.  See Alghamdi, U.S. Dist. LEXIS 68498, *17 ("Whether

18 USCIS ultimately grants or denies the application are [sic] irrelevant for determining whether

19 a plaintiff has succeeded on the merits of an action based on § 1447(b).  The sole purpose of §

20 1447(b) is to provide the applicant with a decision on the application where a decision has

21 been withheld for an unreasonable amount of time.").

22        II.  Substantially Justified

23        A litigant may not recover fees under the EAJA if the government shows that its

24 litigating position and "the action or failure to act by the agency upon which the civil action is

25 based" were substantially justified or that special circumstances make an award unjust.  28

26 U.S.C. § 2412(d).  "Congress enacted the EAJA to ensure that individuals and organizations

27

ORDER — 5

1    would not be deterred by the expense of <u>unjustified</u> governmental opposition from vindicating

2    their fundamental rights in civil actions and in administrative proceedings." <u>Abela v.</u>

3    <u>Gustafson</u>, 888 F.2d 1258, 1262 (9th Cir. 1989) (emphasis added).

4          First, Mr. Finchan brought this action because USCIS had failed to adjudicate his

5    naturalization petition even though he had completed his citizenship interview over seven

6    months earlier.  There is no statutory time limit for the adjudication of naturalization

7    applications, but government agencies are required to conclude matters presented to them

8    within a "reasonable time."  <u>See</u> 5 U.S.C. § 555(b).  Further, 8 C.F.R. 335.3(a) states that

9    "[a] decision to grant or deny the application shall be made at the time of the initial

10   examination or within 120-days after the date of the initial examination of the applicant for

11   naturalization[.]"  While Defendants argued that they could not adjudicate the application until

12   Mr. Finchan's name check was complete, they failed to explain why the name check was

13   delayed.  In a similar case, the Northern District of Florida found that the explanation "that

14   background checks were necessary and had to be completed before the plaintiff could be

15   naturalized... merely restates, in a conclusory manner, the necessity of completing the

16   background check; it does not <u>justify</u> the delay."  <u>Alghamdi</u>, 2006 U.S. Dist. LEXIS 68498 at

17   *43 (emphasis in original).

18         Second, the government's litigation position rests on three arguments: (1) lack of

19   subject matter jurisdiction; (2) the appropriateness of remand because USCIS is better

20   equipped to adjudicate a naturalization petition; and (3) the necessity of remand to USCIS to

21   await the results of Mr. Finchan's statutorily required name check.  To find that the

22   government's litigation position was substantially justified, the Court must determine that the

23   arguments had "a reasonable basis in law and fact."  <u>Abela</u>, 888 F.2d at 1264.

24         The Court finds that Defendants' first two arguments were substantially justified.  A

25   minority of courts had held that district court review is triggered only after the FBI name

26   check is complete.  <u>See</u> <u>Danilov v. Aguirre</u>, 370 F.Supp.2d 441, 443-44 (E.D. Va. 2005).

27

ORDER — 6

1    Although Defendants knew that this Court had asserted subject matter jurisdiction over similar

2    actions, their position against jurisdiction had a reasonable basis in law.  Likewise,

3    Defendants' argument that USCIS is better equipped to assess the merits of a naturalization

4    application is reasonable.

5            However, Defendants point out that, "when analyzing whether the Government was

6    substantially justified in a particular case, courts should consider the Government's litigating

7    position as a whole."  (Response at 6) (citing Comm'r v. Jean, 496 U.S. 154, 161-162 (1990)

8    ("While the parties' postures on individual matters may be more or less justified, the EAJA –

9    like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as

10   atomized line-items.")).  A careful reading of Defendants' pleadings reveals their primary

11   argument:  because Congress requires that an FBI name check be conducted on naturalization

12   applicants, Mr. Finchan's application should not be adjudicated, by the Court or by USCIS,

13   until the check is completed.[1]  As explained above, this argument provides no justification for

14   the delay itself.  See Alghamdi, 2006 U.S. Dist. LEXIS 68498 at *43.  The Alghamdi court

15   reasoned:

16            [W]hile a reasonable person would not dispute the necessity of conducting
             a background check on an applicant for naturalization, a reasonable person
17           would require a satisfactory justification for a substantial delay in
             completing the background check.  Indeed, government agencies are
18           required to conclude matters presented to them within a "reasonable time."
             See 5 U.S.C. § 555(b).  Otherwise, an applicant for naturalization remains
19           in perpetual limbo and is by de facto, denied his citizenship, a right that has
             been afforded by Congress to deserving individuals since the rise of the
20           American democracy.  This is particularly true when Congress has enacted
             legislation permitting the applicant to apply to federal district court if a
21           decision is not rendered on the application with 120 days of the completion

22

23           [1]Defendants offer the clearest description of their argument with the following language: "In summary,
     Plaintiff would like to circumvent key aspects of the naturalization process and obtain citizenship without a complete
24   assessment of his moral character.  He is, in essence, asking this Court to assume that there is nothing in his
     background that would preclude him from obtaining citizenship.  However, USCIS cannot adjudicate a naturalization
25   application absent a completed background investigation.  Consequently, the Court should not adjudicate an application
     without such information.  Should this Court decide to assume jurisdiction over Plaintiff's citizenship application, the
26   Government respectfully requests that this case be remanded to USCIS to await his security check results and,
     thereafter, to promptly adjudicate his application."  (Dkt. No. 4 at 9.)

27

of the examination under 8 U.S.C. § 1447(b).

Alghamdi, 2006 U.S. Dist. LEXIS 68498 at *42-43 (emphasis in original).  As in Alghamdi,
Defendants have made no attempt to justify the delay in processing Mr. Finchan's name
check, and this Court cannot assume that "national security" requires such delay.  Instead,
making responsible United States citizens of those who seek naturalization appears to be the
most reasonable way of ensuring our country's security.

Defendants' reliance on Deng v. Chertoff is misplaced.  Unlike this Court's remand
order, which required immediate adjudication of Mr. Finchan's application, the Deng court
remanded petitioner's application to USCIS with instructions to adjudicate petitioner's
application "as soon as possible after receiving the FBI name check results."  Deng v.
Chertoff, No. C 06-7697 SI, 2007 WL 2600732, *1 (N.D.Cal. Sept. 10, 2007).  Without
some justification for the delayed name check, this Court cannot find that USCIS's delay in
processing Mr. Finchan's naturalization applications was substantially justified.  Neither does
the Court find that any special circumstances make the awarding of fees unjust.

III.  Reasonable Fees and Costs

Plaintiff is entitled to a "reasonable" amount of fees.  28 U.S.C. § 2412(b).  The EAJA
includes a statutory cap for attorneys' fees, unless a special factor justifies a higher rate.  28
U.S.C. § 2412(d)(2)(A).  Because Mr. Finchan's attorney needed specialized immigration law
skills to file the original complaint of fifteen plaintiffs, her efforts in originating the action
justify a higher market rate.  See Pirus v. Bowen, 869 F.2d 536, 540-541 (9th Cir. 1989).
However, Defendants greatly multiplied the work on these cases by moving to sever the
action into fifteen distinct cases.  Because much of the work required in this matter was
duplicated for the multiple plaintiffs, the Court finds it reasonable to award the statutory rate
of fees to any hours spent modifying work product for related cases.  Hours billed by other
members of Plaintiff's legal team are to be compensated at the statutory rate.  Further,
Plaintiff is entitled to reasonable costs.  Because the Court acknowledge's Plaintiff's

ORDER — 8

1  attorney's immigration law expertise, the Court disallows any consultation fee by an outside

2  immigration expert.

3                                      **Conclusion**

4          Plaintiff is entitled to attorneys' fees at market rate for time spent on any original work

5  in preparing this action, and attorneys' fees at the statutory rate for time spent modifying

6  original work for this action once the fifteen plaintiffs in the original complaint were severed

7  into discrete cases.  Plaintiff is also awarded reasonable costs.

8          The parties are directed to submit a joint proposed order regarding costs and fees that

9  accords with the Court's instructions and contains documentation of costs and time billed.

10 The proposed order shall be submitted to the Court within twenty days of this order.

11         The Clerk is directed to send a copy of this order to all counsel of record.

12

13         Dated:  February 17, 2008.

14

15

16

17                                              Marsha J. Pechman

18                                              U.S. District Judge

19

20

21

22

23

24

25

26

27

ORDER — 9